**ROSENTHAL v. E. I. DU PONT DE NEMOURS & CO.**

**No. 58.**

Circuit Court of Appeals, Second Circuit.

Nov. 20, 1944.

Jay A. Gilman, of New York City (Avel B. Silverman, of New York City, and

Max Edelman, of Tarrytown, N. Y., of counsel), for plaintiff-appellant.

William S. Pritchard, of New York City (Chester H. Biesterfeld, of Wilmington, Del., William S. Pritchard and H. H. Levin, both of New York City, and Charles F. Daley, of Wilmington, Del., of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circiut Judge.

This is an appeal by the plaintiff from a judgment granting defendant's motion to dismiss the complaint. The action was to recover a judgment: (1) That defendant be held liable for 2% of the net selling price of every pound of artificial yarn, other than cellulose acetate yarn, manufactured and sold by the defendant under a patent license granted by the plaintiff to the defendant in an agreement between the parties dated May 1, 1938; (2) that if, by reason of a mutual mistake of fact, the agreement is not binding upon either party, defendant be required to pay the reasonable value to it of the patents, ideas and methods disclosed therein which have been used and are being used by the defendant.

The plaintiff Rosenthal, in Article 1 of the agreement, granted to the defendant Du Pont, "a non-exclusive, non-assignable license to practice the inventions and to make, use and/or sell the products described and claimed in said Rosenthal Letters Patent Nos. 1,617,544 and 1,620,233, and reissues and extensions thereof, throughout the United States of America, its territories and dependencies, together with the right in du Pont to license du Pont's customers to make, use and/or sell, in any country, fabrics comprising yarn bought from du Pont and licensed to du Pont herein, to the extent that such fabrics are covered by said Rosenthal United States Letters Patent * * * reissues and extension thereof."

Article 2 of the agreement provided that:

"Except for cellulose acetate yarn, du Pont agrees to pay to Rosenthal a royalty of two per cent (2%) of the net selling price of every pound of artificial yarn manufactured and sold by du Pont within the United States of America, its territories and dependencies, and/or manufactured by du Pont within the United States

572

of America, its territories and dependencies and sold without the confines thereof, under the licenses granted in Article 1, provided that no royalty shall be paid or required on waste or on yarn other than first grade yarn."

Article 3 of the agreement provided that du Pont pay to Rosenthal a royalty of 1% of the net selling price of every pound of cellulose acetate yarn manufactured and sold by it under the license.

Article 5 of the agreement set forth how the amount of money to be paid Rosenthal for past infringements was to be determined, and Article 7 provided that du Pont should pay half of the amount so determined at the time of the execution of the agreement but need not pay the second half or any royalties "until either or both of said Rosenthal Letters Patent shall, by a final decree of a United States court of competent jurisdiction, from which no appeal is taken, be held valid and infringed by the manufacture, use or sale of uneven denier artificial yarn of whatever character."

It was further provided in Article 7 as follows:

"It is agreed, however, that if in any suit said Rosenthal Letters Patent Nos. 1,617,544 and 1,620,233 are held invalid or not infringed by the manufacture, use or sale of uneven denier artificial yarn of whatever character, by a final decree by a court of competent jurisdiction from which no appeal is taken, then du Pont's obligation to pay said remaining one half of said amount payable for past infringement, as provided for in the first paragraph of Article 5, and to pay any royalty for the license granted herein, shall forever cease, * * *

"Rosenthal shall pay back to du Pont any royalties which du Pont shall have paid up to that time, together with the amount paid for past infringement except that portion paid at the time of execution of this Agreement."

Du Pont paid to Rosenthal $6,999.99 in performance of its agreement in Article 7 that it would pay one-half of the amount determined under the provisions of Article 5.

Under the agreement between the parties the question whether du Pont was to pay the second half of the amount fixed as damages for past infringements and was to pay the royalties for exercising the license under the patents was to be decided in a suit by Rosenthal against the Celanese Corporation. A suit by him against Celanese was pending prior to the execution of the agreement but it was discontinued because it had been started before Celanese had committed the acts that were supposed to infringe the patents and a new suit was then immediately begun which was intended to determine whether du Pont must continue payments under the agreement. This suit was brought in the District of Delaware and Judge Nields, who conducted the trial, decided that the patents were invalid and were not infringed by Celanese because they only covered viscose yarn and Celanese only used acetate. No appeal was taken from the final decree of Judge Nields dismissing the suit against Celanese.

Du Pont had sold a small amount of acetate yarn after entering into the agreement of May 1, 1938, the royalties for which were only $81.37, but after March 31, 1937, it ceased to make or sell acetate yarn and limited its activities wholly to manufacturing and selling viscose.

The plaintiff brought this suit to recover the second payment of $6,999.99 together with royalties for sales of uneven denier yarn made after the license was granted. Du Pont moved for summary judgment and Judge Coxe dismissed the complaint because of the provisions of Article 7 of the agreement that if the patents should be "held invalid or not infringed by the manufacture, use or sale of uneven denier artificial yarn of whatever character, by a final decree by a court of competent jurisdiction from which no appeal is taken, then du Pont's obligation to pay said remaining one-half of said amount payable for past infringement, as provided for in the first paragraph of Article 5, and to pay any royalty for the license granted herein, shall forever cease."

■ The plaintiff contends that the defendant was bound to pay royalties because Judge Nields did not hold that the manufacture and sale of viscose yarn such as du Pont makes were outside of the claims of the patents and argues that it is unreasonable to suppose that the parties intended to give du Pont a royalty free license for manufactures and sales of a yarn like viscose which might be within the claims. But Judge Nields not only held the patents not infringed by Celanese but invalid.

Du Pont had paid Rosenthal $6,999.99 toward a settlement for a license and for past infringements. It may be that du Pont was unwilling to continue further payments if the patents were held "invalid or not infringed by the manufacture, use or sale of uneven denier artificial yarn of whatever character" because a competitor who put out uneven denier yarn of any kind would render its license of too little value to justify any payments other than the initial one of $6,999.99. But whether this was the true reason for the agreement or not, the language that the du Pont obligation to make further payments ceased if the patents should be "held invalid or not infringed by the manufacture, use or sale of uneven denier artificial yarn of whatever character by a final decree by a court of competent jurisdiction from which no appeal is taken", is too clear and unqualified to permit any other interpretation than the precise words indicate.

 The plaintiff makes the further contention that the provision of Article 7 that du Pont need not pay the second $6,-999.99 or any royalties until either or both patents shall "be held valid and infringed" and says that this provision taken in connection with that of Article 8 that plaintiff sue for infringement within ninety days after he had knowledge of infringement required him to perform a condition impossible of performance before he would become entitled to any royalties under the agreement. He says the condition was impossible of performance because du Pont on April 17, 1940 had informed him that it had "no definite knowledge of any United States concern which is manufacturing yarn within the scope of the Rosenthal patents, making, however, due allowance for the yarn production of du Pont and of Celanese." But it is idle to argue that the provision excused performance of the condition if an infringer who made yarn within the claims of the patents could not be found. The clause of Article 7 that du Pont should be free of any further obligation under the agreement if in any suit the patents "are held invalid or not infringed by the manufacture, use or sale of uneven denier artificial yarn of whatever character" clearly contemplates a suit in which any kind of uneven denier artificial yarn might be involved and shows that du Pont was to obtain a free license if the patents were either held invalid or not infringed by any yarn of the sort described. Here the decision of Judge Nields held the patents both invalid and not infringed.

Finally, the plaintiff argues that Judge Nields could not lawfully hold the patents both invalid and not infringed because the question of invalidity became moot when noninfringement was once determined. He cites Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263, in support of his argument. But that decision only held that after a finding of noninfringement a court should not go on to hold the patent valid. The distinction between the facts in that case and a situation like the present we discussed in Cover v. Schwartz, 2 Cir., 133 F.2d 541, and reiterated in Larson v. General Motors Corporation, 2 Cir., 134 F.2d 450, 453.

We are clear that under the terms of the agreement a condition of recovering royalty or other payments has not been complied with and that the plaintiff cannot prevail.

Decree affirmed.